UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION (MASTER FILE) NO. 5:06-cv-316 - KSF

**IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006**

| RELATING TO: | | |
|---|---|---|
| | *Anderson* | *5:07-CV-270* |
| | *Byrd* | *5:06-CV-371* |
| | *Combs* | *5:07-CV-312* |
| | *Cone* | *5:07-CV-015* |
| | *Dawson* | *5:07-CV-300* |
| | *Fahey* | *5:07-CV-411* |
| | *First Citizens (N. Kono)* | *5:07-CV-316* |
| | *First Citizens (T. Kono)* | *5:07-CV-317* |
| | *Fortney* | *5:07-CV-309* |
| | *Frederick* | *5:07-CV-319* |
| | *Harris* | *5:06-CV-292* |
| | *Hunt* | *5:06-CV-400* |
| | *Lykins* | *5:07-CV-306* |
| | *Mallory* | *5:07-CV-124* |
| | *Theodore* | *5:07-CV-315* |
| | *Thomason* | *5:07-CV-324* |
| | *Trimble* | *5:07-CV-269* |
| | *Turner* | *5:07-CV-326* |
| | *Winters* | *5:07-CV-127* |
| | *Polehinke* | *5:07-CV-272* |
| | *Heyer* | *5:07-CV-273* |
| | *Clay* | *5:07-CV-274* |

**OPINION AND ORDER**

This matter is before the Court on the Motions of Jeppesen Sanderson, Inc. ("Jeppesen") for Summary Judgment [DE 2138, 2139] in the above cases. Having been fully briefed, these motions are ripe for review.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Passenger Plaintiffs in the above cases filed claims against James Polehinke ("Polehinke"), the First Officer of Comair Flight 5191. Polehinke filed third-party complaints in each of those cases against Jeppesen, claiming that the chart for Blue Grass Airport "contained

erroneous information about the taxiways and runways at the Airport" and that the breach of contract and negligence of Jeppesen in furnishing erroneous charts to Comair "caused ... the crash of Comair Flight 5191." *See, e.g.,* DE 1929 ¶2. The Estates of Captain Clay and Flight Attendant Heyer and FO Polehinke ("Crew Plaintiffs") filed separate complaints against Jeppesen, making basically the same allegations of negligence and various product liability claims. *See, e.g.,* Case No. 5:07-272, DE 1, ¶¶ 50, 88-127.

Jeppesen moved for summary judgment on all claims against it on multiple grounds. Regarding the third-party claims, Jeppesen first argued there is no evidence that any inaccuracy in the Jeppesen charts proximately caused the Comair accident since there is no evidence the Comair pilots were relying on the Jeppesen chart or that the chart misled them. *See* DE 2139, p. 2. Second, Jeppesen contended that Polehinke's third-party claims for indemnity, contribution and apportionment are deficient for various reasons. Third, they claimed that the filing of the third-party complaints was unreasonably delayed without a valid excuse.

Regarding the claims by the Crew Plaintiffs, Jeppesen repeated its argument regarding the absence of a factual basis to show probable cause. [DE 2138, pp. 6-8, 10-12]. It further argued that claims regarding Jeppesen's failure to publish an "interim chart" are without merit, that strict product liability claims must be dismissed because Jeppesen charts are not a product, that breach of warranty claims must be dismissed because there is no privity of contract between Jeppesen and the Crew Plaintiffs, and that certain damage claims should be dismissed as not viable under Kentucky law.

Polehinke responded to the motion for summary judgment in the Passenger Plaintiffs' cases [DE 2226, sealed] and the Crew Plaintiffs responded in their cases [DE 2431, sealed]. Polehinke had no recollection of referring to the Jeppesen chart on the morning of the crash, but testified that it was his practice to have "the Jepp chart of the airport diagram" out in front of him and off to the

side as he taxied from a terminal to the runway.[1] [Polehinke Depo. 123]. His expert also noted a potential reference to the chart in the transcript of the Cockpit Voice Recorder. [DE 2780].

The Crew Plaintiffs relied on Polehinke's testimony; evidence from depositions of Jeppesen personnel that airport diagrams are used by pilots for surface navigation [Fosnot Depo. 176] and that the chart of the Blue Grass Airport did not reflect in its entirety the reality of the taxiway configuration on August 27, 2006 [Fosnot Depo. 37]; and the report of their expert, Jeffrey Edwards, that pilots "review charts" and obtain other information to comply with their preflight responsibilities [Edwards' report p. 12]. They argued that the chart available showed Taxiway "A" extending beyond Runway 26 to Runway 22, but the actual condition was that the taxiway was barricaded north of Runway 26. [DE 2344, p. 9]. They claimed that the "pilots, relying on the Jeppesen chart, had no way of knowing that this barricade did not represent the end of Taxiway 'A.'" *Id.* They further argued that the "only plausible conclusion to be drawn from their takeoff on the wrong runway was that the incorrect and misleading Jeppesen chart induced The Pilots to believe they were at the threshold of Runway 22." *Id.* at 10.

The Crew Plaintiffs referred to the reports of their experts, Moss and Salas, that an inaccurate chart can lead to confusion on the ground. *Id.* They pointed to the opinion of Moss that Captain Clay misidentified the runway due to confirmation bias from a series of misleading clues, and that confirmation bias was not overridden, "most likely" due to a number of latent failures in the aviation system, including that the Jeppesen charts did not match the current airfield configuration and there was no "yellow sheet." *Id.* at 12; Edwards' Report, p. 27. Crew Plaintiffs argued that, if the Jeppesen chart had been updated as the Airport requested, "this accident would have been avoided." *Id.* They claimed there was enough evidence to raise genuine issues of material fact. *Id.* at 13.

---

[1] This testimony is somewhat confusing since First Officer Polehinke did not taxi Flight 5191; Captain Clay did.

The Crew Plaintiffs also argued that Jeppesen is the manufacturer of a "product" and had an obligation to procure knowledge and inspect it to discover lurking dangers. *Id.* at 14. They argued that Jeppesen had an obligation under its own procedures to publish a "yellow sheet" with updated information regarding the Airport construction. *Id.* at 16. They claimed "if there had been a yellow sheet, it also would have required a different taxi brief...." The Crew Plaintiffs contended that Jeppesen is strictly liable for its product and that no privity of contract is required in light of the unique nature of Jeppesen charts. *Id.* at18-21.

Jeppesen replied that the testimony of Polehinke was mischaracterized in the responses and does not support a claim of any reliance on the Jeppesen chart. Accordingly, Jeppesen reiterated that there is no evidence the Jeppesen chart was a proximate cause of the crash. At most, they argued that the Crew Plaintiffs have speculated that it is a possible cause among other possibilities. DE 2431, pp. 2-7; DE 2430, pp. 1-7. Jeppesen argued, in the alternative, that the third-party complaints fail even if they were supported by evidence, because apportionment is not a cause of action and does not support impleader, and that the complaints were untimely. It rejected the claim that it was obligated to publish a "yellow sheet" under its own procedures and argued that its chart is not a "product" under current law.

**II.     ANALYSIS**

**A.     Standard for Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all

4

facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

**B.     Whether There is Sufficient Evidence To Support Proximate Cause**

It is the opinion of this Court that it is not necessary to decide each of the many legal issues raised by the Crew Plaintiffs in light of the failure of proof that it was more likely than not that the plane crash occurred as a result of the pilots relying on the Jeppesen chart. The evidence from all of the Crew Plaintiffs consisted largely of unsupported conclusory allegations and speculation as to what may have been possible. It did not show that the chart was a probable cause of the crash. In *Holbrook v. Rose*, 458 S.W.2d 155 (Ky. 1970), the court said:

> Whether we view the case as one presenting the problem of negligence in the preparation of the product, negligence in failing to adequately warn about the consequences of the use of the product, or improperly warranting the product to be fit for a particular purpose, or whether the problem is viewed as the sale of a product so defective as to be unreasonably dangerous because of an inherent defect or inadequate warning as to use, in every instance recited, the product must be a legal cause of the harm.

*Id.* at 157. While Jeppesen persuasively argues that its chart is not a product, this Court does not need to decide that question because the outcome would be the same under the theories of either party.

5

Captain Clay taxied the plane from the gate onto Runway 26. There is no evidence that Clay had the chart out or relied on it. The cockpit voice recording ("CVR") does not reflect reliance on the chart or that Polehinke was using it to assist Clay during the taxi. The potential reference to the chart is prior to taxi when Polehinke says: "Let's take it out and um, take uuuh, Alpha, two two's a short taxi." [DE 2780, Ex. C, Kredl Depo., pp. 255-57]. Polehinke testified that he could not state from his memory whether Clay had the chart out and available or whether Polehinke had it out and available on August 27, 2006. He could not testify from his memory whether he or Clay referenced the chart at any time that morning. Polehinke adamantly denied that there was any confusion in the cockpit that day, and this testimony is supported by the CVR. Polehinke did not testify that it was always his practice to review the Jeppesen charts as the airplane is taxied, as Crew Plaintiffs claim. To the contrary, he testified that he used the charts "as needed" to get around on an airport. Whether he relied on the chart would "depend on the airport" and what they were going to be doing. Polehinke had never flown with Clay before and could not testify as to his practices. He also said he could not testify about what other Comair captains did and could not speak for them. Expert Jeff Edwards states that pilots generally review the charts and consult other information. This does not establish any probability that either pilot was actually using the chart to guide the taxi on the day of the accident or that the chart misled them. Instead, the inferences from the evidence are to the contrary.

It is undisputed that the Jeppesen chart available for use on August 27, 2006 accurately depicted the layout of the Blue Grass Airport taxiways and runways. What it failed to depict was that taxiway Alpha was barricaded north of Runway 26 and that the taxiway marked on the chart as A-5 was to be taken to Runway 22. The Jeppesen chart showed that a plane must cross Runway 26 in order to reach Runway 22. The Flight 5191 pilots never crossed Runway 26, however. Instead, they stopped at the hold short line of Runway 26 and then turned left onto the first runway they reached. They waited at the hold short line of Runway 26 for 50 seconds and never mentioned the barricades ahead of them or anything about the taxiways. They did not

contact the air traffic controller as they are required to do when unsure of their position or instructions.

The layout of the Airport and its taxiways is not complicated. Captain Clay had landed or taken off from Blue Grass Airport six times during the preceding two years, with three arrivals and two departures during night conditions. First Office Polehinke had landed or taken off from Blue Grass Airport twelve times during the preceding two years, with six arrivals and one departure during night conditions.

If the updated chart had been published on August 3, 2006 as the Airport requested, it would not have reflected the conditions on August 27, either. The updated chart would have shown the post-construction configuration after taxiway A-5 had been removed and the new taxiway A-7 built.

Absent evidence that the pilots were misled by the Jeppesen chart, the Crew Plaintiffs' theory of causation is based only on speculation and conjecture regarding possible causes. "[I]f a party seeks to establish causation by circumstantial evidence, 'the evidence must be sufficient to tilt the balance from possibility to probability.'" *Calhoun v. Honda Motor Co., Ltd.*, 738 F.2d 126, 130 (6th Cir. 1984) (quoting *Perkins v. Trailco Mfg. & Sales Co.,* 613 S.W.2d 855, 857 (Ky. 1981)). "[W]here an accident could have resulted for any number of reasons, the plaintiff has failed to establish the necessary proximate cause." *Id.* In *Calhoun*, there was evidence of a defect in the brake pads of a motorcycle operating in heavy rain conditions. Calhoun's motorcycle collided with the rear of a stationary tractor trailer truck. There were no witnesses to the accident and, as a result of his injuries, Calhoun could not recall what happened. The motorcycle left forty feet of skid marks on the pavement. Calhoun had washed his motorcycle in a car wash thirty minutes before the accident. He offered an expert opinion that the accident was caused by wet brake pad surfaces that resulted in the brakes locking up and the vehicle skidding. The jury found for Calhoun and awarded him compensatory damages. *Id.* at 129.

The court granted judgment as a matter of law for Honda. *Id.* It held the expert's assumption that the brakes were wet lacked sufficient factual foundation. *Id.* at 132. It also said the skid marks were not dispositive of a brake defect, since "[i]t is just as probable that they were the result of inattentiveness, as of brake failure." *Id.* Accordingly, the court held:

> The evidence in this case has never risen to the level of establishing that the alleged defect was the probable cause of the accident. At best, it was a possible cause in a series of possibilities, of which plaintiff's inattentiveness cannot be excluded. Simply establishing a defect as the possible cause of an accident is not, however, sufficient to prove liability.

*Id.* at 133.

In *Enlow v. St. Jude Medical, Inc.*, 327 F. Supp. 2d 738 (W.D. Ky. 2003), the court granted summary judgment for St. Jude, holding that the plaintiff failed to prove that a defective heart valve was the proximate cause of death during surgery. There was a malfunction of the valve, but plaintiff did not prove it was the probable cause of death, rather than the high risk surgery.

> Although the jury may draw reasonable inferences from the evidence of a defect in manufacturing, it is incumbent on the plaintiff to introduce evidence that will support a reasonable inference that the defect was the "probable" cause among other possibilities; otherwise the jury verdict is based upon speculation or surmise. ... There must be sufficient proof to tilt the balance from possibility to probability.... Thus, defendants invariably receive a judgment in their favor as a matter of law in Kentucky where plaintiffs are unable to isolate one cause, either by direct evidence, or, more relevant to the present case, by eliminating other possible causes.

*Id.* at 741 (*quoting Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745 (Ky. 1973).

In *Texaco, Inc. v. Standard*, 536 S.W.2d 136 (Ky. 1976), an employee obtained gasoline, instead of kerosine, from a Texaco tank on his employer's premises and was fatally injured in an explosion on the job while cleaning oil from a pit. The plaintiff claimed Texaco was negligent for not labeling "gasoline" on the tank. The court reversed the jury award for plaintiff, saying there was "no proof that the accident was caused by the failure of Texaco to label the tank." The court said a plaintiff:

> must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of a defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough and when the matter remains one of pure speculation or conjecture, or the probabilities

8

> are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

*Id.* at 138.

As these cases illustrate, plaintiffs in the present case have failed to tilt the balance from possibility to probability on the issue of proximate cause. As in *Calhoun*, the Jeppesen chart is, at best, "a possible cause in a series of possibilities." Like the malfunctioning heart valve in *Enlow*, the Jeppesen chart did not accurately portray the taxiway conditions on the ground on August 27, 2006, but there is no evidence that this chart was the probable cause of the crash among other possibilities. As in *Texaco*, a "mere possibility of such causation is not enough." Viewing the evidence in the light most favorable to the Crew Plaintiffs, it is the opinion of this Court that the plaintiffs have failed to present significant probative evidence on the issue of causation, and summary judgment should be granted in favor of Jeppesen. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The Crew Plaintiffs also claim that Jeppesen's failure to issue a "yellow sheet" was a contributing factor of the crash. [DE 2344, p. 17]. They suggest that the existence of a yellow sheet with information that the taxiway was barricaded would have resulted in a different taxi brief and avoided the crash. This is merely speculation, however, particularly in light of the pilots' failure to follow approved briefing procedures. The Crew Plaintiffs also incorrectly claim that Jeppesen's procedures required the publication of a yellow sheet under the circumstances. Jeppesen's procedures state that yellow sheets "are used to alert pilots to ... information too complex to describe in Chart NOTAMs." In fact, the construction change in taxiway Alpha *was* included in local NOTAMs at the time of the accident, refuting any claim that the information was too complex to describe in a NOTAM. As with their claim that the chart was inaccurate, the Crew Plaintiffs have failed to meet their burden of presenting significant probative evidence that Jeppesen's failure to issue a yellow sheet was the proximate cause of the plane crash.

9

### C. Claims for Certain Damages

Plaintiff Clay acknowledges that her claim for loss of spousal consortium is not available under Kentucky law. Accordingly, summary judgment is granted on this claim. Plaintiff Heyer acknowledges that this Court has dismissed claims for pre-impact fear under Kentucky law. *In re Air Crash at Lexington, Kentucky, August 27, 2006*, ___ F. Supp.2d ___, 2008 WL 80059 (E. D. Ky. 2008). She notes, however, that Kentucky law allows damages for post-impact fear or pain and suffering. *Vitale v.Henchey*, 24 S..W.3d 651, 659 (Ky. 2000). Accordingly, her claims on that ground are not dismissed as to any other defendants.

### III. CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS**:

A. The Motions of Jeppesen Sanderson, Inc. for summary judgment [DE 2138, 2139] are **GRANTED**;

B. All claims against Jeppesen Sanderson, Inc. in the above cases are **DISMISSED WITH PREJUDICE**; and

C. Jeppesen's Motion to Strike Report of Barnette [DE 2617], and Motion to Exclude Expert Opinions Asserting that the Pilots Relied on the Jeppesen Chart [DE 2659] are **DENIED AS MOOT**.

This June 27, 2008.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**

10